# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 15-920V
Filed: October 19, 2018
To Be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| V.L., | |
|     Petitioner, | Attorneys' fees and costs decision; lack of reasonable basis |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
|     Respondent. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Michael A. Firestone, San Mateo, CA, for petitioner.
Heather L. Pearlman, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION DENYING AN AWARD OF ATTORNEYS' FEES AND COSTS[1]

On August 24, 2015, petitioner filed a petition *pro se* under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that influenza ("flu") vaccine administered on September 11, 2012 caused her a right frozen shoulder. Pet. Preamble and ¶ 2.

On April 19, 2018, the undersigned issued a decision dismissing the case. V.L. v. Sec'y of HHS, No. 15-920V, 2018 WL 2188919 (Fed. Cl. Spec. Mstr. April 19, 2018). On September 17, 2018, petitioner filed a motion for attorneys' fees and costs. For the reasons set forth below, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs.

### PROCEDURAL HISTORY

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. **This means the decision will be available to anyone with access to the Internet.** When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the documents disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

On August 24, 2015, petitioner filed a petition *pro se* under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that influenza ("flu") vaccine administered on September 11, 2012 caused her a right frozen shoulder. Pet. Preamble and ¶ 2.

Petitioner filed as Exhibit 1 her vaccination record, which did not reveal in which arm she received flu vaccine. Med. recs. Ex. 1, at 2. On the same date on which petitioner received flu vaccine, she received Pneumovax, a vaccine not listed on the Vaccine Injury Table. Id. The vaccine record petitioner filed also does not list in which arm she received Pneumovax. Id.

On January 15, 2016, counsel moved to substitute as petitioner's attorney, which was consented to on January 19, 2016. On July 19, 2016, petitioner filed an amended petition. Besides repeating petitioner's initial allegation that flu vaccine caused her a right frozen shoulder and adding an allegation of brachial neuritis (Parsonage-Turner Syndrome), petitioner in her amended petition alleges, in the alternative, that flu vaccine caused a significant aggravation of an underlying arthritic shoulder condition that was asymptomatic until her September 11, 2012 vaccination. Am. Pet. Preamble and at ¶¶ 22, 23. Petitioner attempted to support her allegation that she received the flu vaccine in her right arm by referencing her affidavit (Ex. 18), her daytimer (Ex. 22), and her husband's affidavit (Ex. 19), but she did not reference the vaccine record which documents she received flu vaccine in her left deltoid.

Petitioner's counsel filed numerous records, including Exhibit 14, which constitutes the vaccine record for FluZone administered to petitioner on September 11, 2012 in her left arm ("left deltoid"). Med. recs. Ex. 14, at 2. The vaccine record also documents petitioner received a pneumonia vaccine on September 11, 2012, without specifying in which arm she received it. Id. at 3, 4. Thus, it is unclear whether Pneumovax was injected into petitioner's left arm together with her flu vaccination or injected into her right arm. What is clear is that the only medical record contemporaneous with petitioner's flu vaccination, i.e., the vaccine record, states that she received flu vaccine in her left deltoid.

On July 28, 2016, the undersigned issued an Order to Show Cause stating the Vaccine Act, §300aa-13(a)(1), prohibits her from ruling for petitioner based solely on her allegations unsubstantiated by medical records or medical opinion. Doc 24, at 2. The undersigned ordered petitioner to show cause why this case should not be dismissed during a telephonic status conference set for August 3, 2016. Id. During the conference, the undersigned emphasized that she cannot rule for petitioner based on her insistence that she received the flu vaccine in her right arm when her medical records contradict her claim. Petitioner asked to respond to the undersigned's Order to Show Cause in a memorandum by November 2, 2016. On October 28 and November 29, 2016, petitioner filed a motion for an extension of time to file her response, respectively.

On November 30, 2016, the undersigned issued an order discussing inconsistencies between petitioner's affidavit and her medical records from Dr. Louise E. Nurre,[2] and directing

---

[2] While petitioner stated in her affidavit at paragraph three that she never recovered from the 2012 flu vaccination, she told Dr. Nurre on December 27, 2013 (one year and three and one-half months after

petitioner to consider the points in responding to her Order to Show Cause.  Doc 31.  The undersigned also questioned why petitioner returned for another flu vaccination 14 months later if, indeed, she knew that her 2012 flu vaccination had caused her right arm pain.  Id. at 1.

On January 3, 2017, after two motions for an extension of time, petitioner filed her response to the undersigned's Order to Show Cause.  Petitioner argued that the vaccine record is erroneous and that the "totality of the evidence" supports a finding that she received a flu vaccination on September 11, 2012 in her right arm.  Doc 34, at 1 and 26.

On March 29, 2017, the undersigned issued an order in which she set forth her concerns that the claim lacked a reasonable basis.  Doc 38.  The undersigned stated "even if [petitioner] were to prove that she received flu vaccine, not Pneumovax, in her right shoulder, there are no contemporaneous medical records to substantiate any reaction lasting more than six months." Id. at 3.

A hearing was held on September 6, 2017.  Petitioner, her husband, and one of her massage therapists, Stewart Walker, testified.

On April 19, 2018, the undersigned dismissed the petition, finding that petitioner received flu vaccine in her left arm and, therefore, had no reasonable basis to file her petition.  Judgment entered on May 21, 2018.  Petitioner did not file a motion for review.

On September 17, 2018, petitioner filed a motion for attorneys' fees and costs ("motion").  Petitioner requests $68,536.79 in attorneys' fees, $2,340.40 in attorneys' costs, and $2,010.86 in petitioner's personal costs, for a total request of $72,888.05.

On September 26, 2018, respondent filed an opposition to petitioner's motion for attorneys' fees and costs ("opposition") arguing petitioner had no reasonable basis to file the petition.  Resp. at 1.  Respondent stated that the question of reasonable basis is an objective inquiry unrelated to counsel's conduct.  Id. at 9 (citing Simmons v. Sec'y of HHS, 875 F. 3d 632 (Fed. Cir. 2017)).  Respondent respectfully requests the undersigned exercise her discretion and deny petitioner's motion.  Id. at 12.

On October 2, 2018, petitioner filed a reply to respondent's opposition ("reply").  In her reply, petitioner argues that: (1) she had a reasonable basis to file her petition and her counsel was convinced that petitioner had a reasonable basis; (2) it was reasonable for petitioner to continue with her claim to prove that an error existed in the CVS vaccination record; (3) petitioner's symptoms lasted more than six months; (4) petitioner's delay in reporting her symptoms to a doctor was understandable under the circumstances; (5) medical journal articles

---

petitioner's 2012 flu vaccination in her left arm) that she had a several-year problem with mobility in her right shoulder "stemming from she does not know what."  Doc 31, at 1.  On the same date, petitioner had x-rays done on her right shoulder because of right shoulder pain after her fell off a stool onto her right shoulder.  Id. at 2.

supported petitioner's medical theory and petitioner's injury is a common vaccine injury; and (6) petitioner filed her petition in good faith.   Doc 75, at 1-7.

This matter is now ripe for adjudication.

## DISCUSSION

### I. Entitlement to Fees Under the Vaccine Act

#### a. Legal Standard

Under the Vaccine Act, a special master or a judge on the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."   42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.   Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).   A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.   Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).   Petitioners are "entitled to a presumption of good faith."   Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Rules.   Deciding whether a claim was brought in good faith and had a reasonable basis "is within the discretion of the Special Master."   Simmons v. Sec'y of HHS, 128 Fed. Cl. 579, 582 (2016), aff'd, 875 F. 3d 632 (Fed. Cir. 2017) (quoting Scanlon v. Sec'y of HHS, 116 Fed. Cl. 629, 633 (2014) (citing Davis v. Sec'y of HHS, 105 Fed. Cl. 627, 633 (2012)).   In determining reasonable basis, the Federal Circuit has clarified in Simmons that it is "an objective inquiry unrelated to counsel's conduct." Simmons, 875 F. 3d at 636.

#### b. Good faith and reasonable basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith.   Grice, 36 Fed. Cl. at 121.   Thus, petitioner's argument of good faith in her reply is not an issue.   There is no evidence that this petition was brought in bad faith.   Therefore, the undersigned finds that the good faith requirement is satisfied.   However, for the reasons outlined below, the undersigned finds petitioner did not have a reasonable basis to bring her claim.

Simmons holds that reasonableness is an objective inquiry, not a subjective inquiry. Simmons, 875 F. 3d at 636.   In keeping with the Vaccine Act and the Federal Circuit's decision in Simmons, the undersigned applies the reasonable basis standard by focusing on the objective evidence only.   In Highland v. Secretary of Health and Human Services, where Mr. Highland alleged that flu vaccine caused him Parsonage-Turner Syndrome ("PTS") in his right arm when the flu vaccine was administered in his left deltoid, Mr. Highland argued that his counsel did not

4

know "LD" refers to left deltoid. Highland, No. 17-1333V, 2018 U.S. Claims LEXIS 345, at *6 (Fed. Cl. Spec. Mstr. Jan. 19, 2018), aff'd, 2018 U.S. Claims LEXIS 886 (Fed. Cl. July 9, 2018). The undersigned denied Mr. Highland's motion for attorneys' fees and costs, holding that "counsel's lack of experience had no bearing on whether there was an objective reasonable basis for petitioner to file his claim. Petitioner had no reasonable expectation that he would prove that flu vaccine administered in his left deltoid caused his alleged PTS in his right arm when his right arm pain began before his flu vaccination. . . ." Id. at 6-7. On appeal, Mr. Highland argued that the undersigned ignored his recorded statement asserting that the flu vaccine was injected into his right deltoid. Highland, 2018 U.S. Claims LEXIS 886, at *7. Senior Judge Edward J. Damich denied Mr. Highland's motion for review finding the undersigned was aware of Mr. Highland's recollection and "acted in accordance with the law and within her discretion by not finding a reasonable basis for the claim based 'solely on the claims of petitioner.'" Id. at 7-8.

      Here, petitioner argues that there was a reasonable basis when she filed her petition and when her counsel accepted representation. In her motion for attorneys' fees and costs, petitioner explains that she "provided [her counsel] a convincing explanation for how a September 11, 2012 influenza vaccination in her right side caused her to lose mobility in her right shoulder. She explains why she was confident that the influenza vaccine was administered in her right. . . ." Doc 73, at 2-3. In her reply, petitioner provides the following reasons to support her argument: (a) her counsel "performed a reasonable pre-filing investigation over approximately a two-month period"; (b) she had a convincing and credible explanation about her injury and why she believes it was caused by the flu vaccine; (c) the records of Dr. Francis Neelon confirmed that petitioner had no pre-existing condition related to a right-shoulder dysfunction; (d) she had been referred for physical therapy for her right shoulder impingement and pain; and (e) petitioner provided objective evidence from her massage therapist, Stewart Walker, to support her reasonable basis. Doc 75, at 1-2 and 6.

      While counsel has a duty to investigate a claim before filing it, the reasonable basis analysis is unrelated to counsel's conduct and must focus solely on whether there is evidentiary support for the claim set forth in the petition. Simmons, 875 F. 3d at 636. Counsel's performance of due diligence, counsel's reliance on petitioner's explanation, and petitioner's subjective belief that the flu shot was given in her right arm and caused her injury have no bearing on whether there was an objective reasonable basis for petitioner to file her claim. The fact that Dr. Neelon diagnosed petitioner with a viral infection on September 18, 2012 indicates petitioner had no reasonable basis to say she had SIRVA after she had received flu and Pneumovax vaccinations. In December 2013, Dr. Nurre referred petitioner to physical therapy for her right shoulder and knees after she fell off a stool onto her right shoulder, attributing her right shoulder pain to that fall. Med. recs. Ex. 76, at 22. On January 6, 2014, petitioner went to Pinole Physical Therapy Clinic for her right shoulder joint pain and she gave a history that she injured her right shoulder when she fell off a small table. Med. recs. Ex. 13, at 3. Petitioner's long history of seeing physical therapists itself is not sufficient to show that she had a reasonable basis to bring the case. Furthermore, petitioner's statement that Mr. Walker's testimony "would carry reasonable weight in the eyes of the Special Master" (Doc 75, at 6) is inaccurate. Mr. Walker did not have any treatment notes or billing documents relating to treatment petitioner received in September 2012. When the undersigned asked Mr. Walker how without records he

remembered what petitioner said five years earlier, i.e., that petitioner came to his office in September 2012 for her right shoulder pain after receiving a flu vaccination in that arm, he answered because petitioner is a "fascinating person." In her Decision dismissing the case ("Decision"), the undersigned made it clear that petitioner had no reasonable basis to file her petition alleging that flu vaccine caused her initial claim of a right frozen shoulder or her subsequent claims that flu vaccine caused her brachial neuritis, SIRVA, or significant aggravation of her osteoarthritis. V.L. v. Sec'y of HHS, No. 15-920V, 2018 WL 2188919, at *38 (Fed. Cl. Spec. Mstr. April 19, 2018).

In her reply, petitioner also asserts that petitioner had a reasonable basis to continue her case since additional records were not received from CVS until July 11, 2016 and an error existed in the CVS vaccination record. Doc 75, at 2-3. Because petitioner put in her daytimer that she received flu vaccine in her right arm and Pneumovax in her left arm, petitioner's counsel was "reassured that petitioner's recollection was credible" and believed that these handwritten entries "would be taken far more seriously as smoking gun evidence." Id. at 2. While petitioner's vaccine record states that she received flu vaccine in her left deltoid, petitioner relies on her daytimer, which is subjective evidence from petitioner who is a remarkably inaccurate historian, as the undersigned found numerous times in her Decision. It does not matter what counsel thought or believed unsupported by medical records or medical opinion. The undersigned does not find a reasonable basis for a claim based solely on petitioner's insistence that she received the flu vaccine in her right arm when her vaccine record contradicts her claim.

Moreover, petitioner claims that her symptoms lasted beyond six months. Id. at 5. In her Decision, the undersigned found even if petitioner had received flu vaccine in her right arm, her symptoms did not last more than six months. V.L., 2018 WL 2188919, at *39. On November 12, 2012 (two months after the flu shot), petitioner filled out a questionnaire when she saw Dr. Lanner-Cusin. On page 3 of the questionnaire, in answer to whether she had significant muscle or joint pain, petitioner answered "right knee pain," but did not answer "shoulder pain." On December 17, 2012 (three months after her flu vaccination), petitioner had her annual visit with Dr. Nina R. Birnbaum, petitioner's primary care physician ("PCP") at that time, but petitioner did not complain about having right shoulder pain. Doc 38, at 2. Dr. Birnbaum did a functional evaluation of petitioner, asking whether petitioner needed help with bathing, telephone use, transportation, or shopping, and whether petitioner had any difficulty preparing meals and doing housework and laundry. Petitioner answered no, i.e., no problem, to each of these questions. Id.

Petitioner goes on to argue that any delay in her reporting her symptoms to a doctor was understandable since she "reported to her PCP, Dr. Michael Lewis, in the days following the vaccination and he told her not to worry as the shoulder pain would go away in time." Doc 75, at 4. This statement is based solely on petitioner's opinion without any corroboration from Dr. Lewis' notes of such a conversation and his uttering such a statement. As the undersigned noted in her Decision, "Petitioner testified that she called Dr. Lewis on September 24, 2012 because of her right shoulder pain but no record of petitioner's calls to Sutter Health Sutter East Bay on September 2, 2012 reflect that happened. She notes in her daytimer under September 24, 2012 to call Dr. L re: shoulder, but the Sutter East Bay phone records show petitioner called her

gynecologist Dr. Katarina Lanner-Cusin (a different Dr. L.) to request Dr. Lanner-Cusin order a bone density test (DEXA) for petitioner's osteoporosis." V.L., 2018 WL 2188919, at *21. In fact, petitioner did not report her symptoms to any of her doctors until more than a year after her 2012 flu vaccination. On September 19, 2013, petitioner complained to Dr. Lewis after she made him her PCP again that she had a painful right shoulder, right hand, right forearm, and knee, all of which she attributed to her guitar playing. Petitioner actually says in her reply that ". . . it is true that the records do not note that [petitioner] reported symptoms related to her right shoulder until December 27, 2013 . . . ." Doc 75, at 5. In her Decision, the undersigned found petitioner's explanation for why she did not tell any doctor until a year after she returned from Durham, NC, that her right shoulder was painful was because she took to heart Dr. Lewis's supposed advice that she would get better is not credible. V.L., 2018 WL 2188919, at *34.

In addition, petitioner argues medical journal articles support her medical theory that "SIRVA injuries are quite common." Doc 75, at 4. This statement is irrelevant. It does not matter that SIRVA is a common vaccine injury. The question is whether or not petitioner had a SIRVA injury caused by her flu vaccination.

Petitioner had no reasonable basis for bringing this case to prove that flu vaccine administered in her left deltoid caused her alleged shoulder pain in her right arm.[3]

## CONCLUSION

The undersigned finds petitioner did not have a reasonable basis to file a petition. Therefore, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

Dated: October 19, 2018                          s/ Laura D. Millman
                                                  Laura D. Millman
                                                  Special Master

---

[3] For a full discussion of the multiple reasons the undersigned dismissed petitioner's case, see V.L., 2018 WL 2188919, at *33-40.
[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.